IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRENCE A. HARVEY, | ) | |
|     Plaintiff, | ) | Case No. 7:17CV00113 |
| | ) | |
| v. | ) | |
| | ) | |
| J. HALL, *et al.*, | ) | By: Norman Moon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Terrence A. Harvey, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants Sergeant Hall and Officer Blankenbeckler violated his Eighth Amendment rights while housed at the Red Onion State Prison (ROSP).[1] Specifically, Harvey alleges that Blankenbeckler slammed Harvey's hand in the tray slot on the door of his segregation cell, and Sgt. Hall refused to send Harvey to the Medical Department (Medical). Harvey further alleges state law assault and battery claims against Blankenbeckler. Defendants filed a motion for summary judgment, arguing that Harvey's claims are meritless, and that defendants are nonetheless entitled to qualified immunity on the federal claims. Harvey responded, and this matter is ripe for disposition. Upon review of the record, defendants' motion for summary judgment will be denied in part and granted in part.

I.

Harvey contends that, on June 10, 2016, Officer Blankenbeckler slammed Harvey's hand in the tray slot window on Harvey's cell door as he served Harvey a Ramadan breakfast tray. When Blankenbeckler served the tray through the tray slot, Harvey notified Blankenbeckler that his tray was missing two boiled eggs. Blankenbeckler observed through the tray slot window

---

[1] Blankenbeckler is no longer employed as a correctional officer at ROSP.

that the tray was missing two eggs and told Harvey, "Stop bitching and just take the food tray." Believing that he was being intentionally denied his proper Ramadan breakfast by Blankenbeckler, Harvey placed his left hand in the tray slot opening to prevent the inmate access door from being closed so he could protest the missing food and elicit Blankenbeckler to call a supervisor to remedy the issue. No supervisor was called. While Harvey's hand was still in the tray slot, he asked to speak with the Sergeant, but Blankenbeckler began slamming Harvey's hand in the tray slot "over and over again." Compl. ¶¶ 9-14, Dkt. No. 1.

When as Blankenbeckler stopped slamming Harvey's hand in the tray slot, Harvey put his hand in the window to show Blankenbeckler that he suffered a deep laceration to his left palm and was bleeding. Harvey then requested to be sent to Medical for treatment, but Blankenbeckler walked away. Harvey wrapped his bleeding wound in a shirt. Approximately 25 minutes later, Sergeant Hall appeared at Harvey's cell door and told Harvey, "[You are] officially on [my] shit list." Harvey unwrapped his bleeding hand from the shirt and showed it to Sgt. Hall, again asking to be sent to Medical. Sgt. Hall responded, "No, I'm not calling Medical stop being a pussy[,] if you don't like it write it up." Harvey did not receive medical attention that day for his wound. Compl. ¶¶ 15-21, Dkt. No. 1.

Harvey filled out and submitted a Medical request form on June 10, 2016, but because it was a Friday, Medical did not see him for a sick call until June 15, 2016. Harvey's hand ached at night, preventing him from sleeping, and began to turn "purple and greenish." This prompted Harvey to request a tetanus shot, in light of rust on the tray slot that was slammed on his hand. After Harvey was examined by Medical, he was administered a tetanus shot on June 22, 2016. Compl. ¶¶ 22-25, Dkt. No. 1.

In their motion for summary judgment, defendants submitted affidavits asserting that Blankenbeckler gave Harvey a breakfast tray with three eggs on it, which was the appropriate portion, when Harvey refused to accept it. Despite Blankenbeckler's explanations that the tray was correct, Harvey continued to refuse his tray. Blankenbeckler left the tray and attempted to close the tray slot so he could feed the other inmates, but Harvey placed a small paperback book in the tray slot. Unable to close the tray slot, Blankenbeckler asked Harvey to remove the book. Harvey refused. Blankenbeckler attempted to close and "secure" the tray slot, but was unable to because of the book. Blankenbeckler called for assistance from Officer Howard, who is not a defendant, and Howard asked Harvey to remove the book. While Blankenbeckler and Howard spoke with Harvey, another inmate in a cell on the bottom tier called up to Harvey and identified the food items on his tray.

After that, Harvey accepted the tray and removed the book from the tray slot, which allowed Blankenbeckler to then close the tray slot. Blankenbeckler Aff. ¶¶ 4-5, Dkt. No. 16-1. Blankenbeckler notified the building sergeant and recorded his interaction with Harvey in the log book to reflect that the incident did not require a report or medical attention. Blankenbeckler did not notify medical staff. Blankenbeckler Aff. ¶¶ 5-6, Dkt. No. 16-1. Defendants submit that Harvey was later seen for a sick call because Harvey requested a tetanus shot. On June 10, 2016, the examining nurse noted that Harvey had a one inch long scab on his left hand and that Harvey stated he cut it on a rusty tray box. Harvey was referred to a doctor, who treated Harvey on June 21, 2016. The prison doctor reviewed Harvey's chart and noted that Harvey was due for a tetanus shot, and because Harvey requested it, the prison doctor ordered the shot be administered. Bledsoe Aff. ¶¶ 5-6, Encl. A, Dkt. No. 16-3.

3

For his injuries and alleged constitutional violations, Harvey seeks $8,000 in compensatory damages and $12,000 in punitive damages against each defendant. Harvey also moves to compel discovery of the video footage of ROSP's C Building, Pod 2 from the date and time at issue.

II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative[.]" *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

III.

As a preliminary matter, to the extent Harvey brings this action against the defendants in their official capacities for monetary damages, such claims are not cognizable under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Because the prison official

4

defendants in their official capacity are not "persons" who can be sued under § 1983, the court must dismiss Harvey's attempted claims against them and grant the defendants' motion for summary judgment with respect to these claims.

IV.

In his first claim, Harvey alleges violation of his rights under the Eighth Amendment when Blankenbeckler repeatedly slammed Harvey's hand with the tray slot door. The parties dispute whether Harvey's hand was even in the tray slot. I find material disputes of fact exist as to this claim.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). To determine whether a prisoner has stated a cognizable excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Whether force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *see, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010). Nonetheless, "punitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990) (quotations omitted).

The extent of the prisoner's injury is not dispositive. Rather, when prison officials maliciously and sadistically use force to cause harm, "contemporary standards of decency always

5

are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9; *see Wilkins*, 559 U.S. at 37-39 (holding that an excessive force claim involving only *de minimis* injury is not subject to automatic dismissal). "[T]he nature of the force, rather than the extent of the injury, is the relevant inquiry." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013).

In this case, Harvey contends that Blankenbeckler repeatedly and gratuitously slammed the tray slot door on Harvey's hand, *i.e.*, for no legitimate nonpunitive purpose. Harvey's cell door was closed, and even with his left hand placed in the tray slot, defendants do not argue that Harvey posed a threat to the safety of any present prison officials. Moreover, Harvey sufficiently puts forth an injury from his encounter with Blankenbeckler, as Harvey claims to have suffered a laceration and had to wrap his bleeding hand with a shirt. Accordingly, having reviewed the record as a whole and drawing all reasonable inferences in the light most favorable to Harvey, he sets forth an Eighth Amendment violation.

V.

In his next claim, Harvey alleges that Sgt. Hall violated his Eighth Amendment rights by denying him medical care when he sought treatment for his bleeding hand. To prove an Eighth Amendment claim for denial of medical care, a plaintiff must advance facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F.Supp. 487, 492 (E.D.Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard and, thus, mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. *Estelle*, 429 U.S. at 105-06; *see Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate

indifference is a very high standard – a showing of mere negligence will not meet it."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Sgt. Hall is a non-medical prison official, and therefore, Harvey "must plead that [Sgt. Hall], through [his] own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A non-medical prison official who was not involved in the treatment of an inmate's medical needs may be liable if the official (1) was personally involved with a denial of treatment, (2) deliberately interfered with a prison doctor's treatment, or (3) tacitly authorized or was deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Viewing the facts in the light most favorable to Harvey, he establishes that Sgt. Hall violated his Eighth Amendment rights by not sending him to Medical. According to Harvey, Sgt. Hall appeared at Harvey's cell door approximately 25 minutes after his hand was injured and observed Harvey's bleeding hand wrapped in a shirt. When Harvey asked to be sent to Medical, Sgt. Hall responded, "No, I'm not calling Medical stop being a pussy," and Harvey did not receive medical attention for his wound until five days later. In support of his motion for summary judgment, Sgt. Hall submits institution records to contend that he does not recall interacting with Harvey and was not assigned to Harvey's building, the C Building, on June 10, 2016. Hall Aff. ¶ 4, Dkt. No. 16-2. Records reflect that Sgt. Hall was the A Building supervisor on night shift from 5:45 p.m. on June 9, 2016, until 6:15 a.m. on June 10, 2016. However, the same records also reflect that Hall brought paperwork to the C Building regarding Harvey at 4:25

a.m., and the control room records indicate that Sgt. Hall made rounds in the C Building at other times that night. Hall Aff. ¶¶ 4-5, Dkt. No. 16-2. When combined with Harvey's account of the events, there is a genuine dispute of material fact as to whether Sgt. Hall interacted with Harvey and refused to send him to Medical.

VI.

As a backstop argument against the Eighth Amendment claims, defendants argue they are entitled to qualified immunity. Defendants' assertion of qualified immunity is without merit.

The doctrine of "qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015). Having already found that the facts in Harvey's favor could establish a violation of his Eighth Amendment rights, the qualified immunity inquiry is thus whether those rights were "clearly established at the time of the alleged violation." *Id.* at 881 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

Defendants have not met their burden. Most obviously, their brief does not even engage in the proper analysis of whether the right at issue was "clearly established." (Dkt. 16 at 12–13). Instead, in a single paragraph, they simply refer back to their version of the facts and corresponding argument that no Eighth Amendment violation occurred. This is not a qualified immunity argument at all, but rather a regurgitation of their position on the merits. The qualified immunity defense is therefore not properly raised. And even if it was, it would fail. As for Blankenbeckler, no reasonable official aware of Supreme Court and Fourth Circuit precedent

could have thought, in July 2016, that it was permissible to repeatedly slam an inmate's hand in a door for no apparent reason other than malice, which is what the facts in Harvey's favor suggest. *See*, *e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 7, 9 (1992); *Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010); *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013). Likewise for Sgt. Hall, no reasonable officer in 2016 could have thought that it was constitutionally acceptable to respond to a prisoner's request for treatment of a open, bleeding gash with a steadfast refusal, punctuated by the directive to "stop being a pussy" and a five-day wait for treatment. *See*, *e.g.*, *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). For these reasons, Blankenbeckler and Hall are not entitled to qualified immunity at this time.

VII.

In addition to his federal claims, Harvey presents parallel state law assault and battery claims against Officer Blankenbeckler. Defendants argue that the state law claims should be dismissed for lack of subject matter jurisdiction, and that they are nonetheless entitled to summary judgment because the claims lack merit and defendants are entitled to sovereign immunity.

A.

Defendants argue that the state law claims should be dismissed for lack of subject matter jurisdiction, because the basis for federal question on Harvey's other claims fail. This argument lacks merit. As previously stated, I find that Harvey's federal claims survive summary judgment, and therefore, I have original jurisdiction. *See* 28 U.S.C. § 1331. This issue, then, is whether to retain the state law claims under supplemental jurisdiction.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). Claims are considered part of the same case or controversy when they are "derived from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 729 (1966).

Supplemental jurisdiction exists here. According to Harvey's version of events, his state and federal claims involve precisely the same facts. *See Gibbs*, 383 U.S. at 729. Namely, Harvey's state law claims involve the same tray slot allegations underlying his Eighth Amendment excessive force claim against Blankenbeckler. Both the federal and state law claims involve the same evidence and parties, and therefore exercise of supplemental jurisdiction over the state law claims is proper.

B.

Alternatively, Blankenbeckler contends that Harvey fails to state cognizable assault and battery claims because he did not intend to harm Harvey and Harvey placed a book in the tray slot, not his hand.[2] Blankenbeckler is not entitled to summary judgment on these claims.[3]

To prove assault under Virginia law, Harvey must show that Blankenbeckler "attempt[ed] with force and violence, to do some bodily hurt to [Harvey], whether from wantonness or malice, by means calculated to produce the end." *United States v. Carthorne*, 726 F.3d 503, 512 (4th

---

[2] Defendants additionally argue that Sgt. Hall should be dismissed from the state law claims for lack of personal involvement. However, Harvey does not allege any state law claims against Sgt. Hall.

[3] To the extent Harvey raises the state law claims against Blankenbeckler in his official capacity, such claims fail. "States retain immunity from suits as 'a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today[.]" *Beverly v. Lawson*, No. 3:10cv83-HEH, 2011 WL 586416, at *5 (E.D. Va. Feb. 9, 2011) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)). Sovereign immunity applies "to state employees acting in their official capacity." *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996). Therefore, Harvey's state law claims against Blankenbeckler in his official capacity are barred by Virginia's sovereign immunity.

10

Cir. 2013) (quoting *Montague v. Commonwealth*, 278 Va. 532, 541, 684 S.E.2d 583, 588 (Va. 2009)). Separately, to prove battery under Virginia law, Harvey must show there was "the actual infliction of corporal hurt on another (*e.g.*, the least touching of another's person)." *Id.* (quoting *Jones v. Commonwealth*, 184 Va. 679, 36 S.E.2d 571, 572 (Va. 1946) (emphasis omitted)). A completed battery includes an assault and may be committed by any injury "however small it may be, as by spitting in a man's face, or in any way touching him in anger, without lawful provocation." *United States v. White*, 606 F.3d 144, 148 (4th Cir. 2010) (emphasis omitted) (quoting *Hardy v. Commonwealth*, 17 Gratt. 592, at *6 (Va. 1867)). To be sure, even "[t]he slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress." *Crosswhite v. Barnes*, 139 Va. 471, 124 S.E. 242, 244 (Va. 1924) (citation omitted). As such, "a perpetrator need not intend to or actually inflict physical injury to commit assault and battery." *Carthorne*, 726 F.3d at 512 (citing *White*, 606 F.3d at 148).

Viewing the evidence in the light most favorable to Harvey, Blankenbeckler repeatedly slammed the tray slot door on Harvey's hand. Nor does the record suggest there was any "lawful provocation" to justify Blankenbeckler's actions. *White*, 606 F.3d at 148. While the parties dispute whether Blankenbeckler intended to cause Harvey harm, the dispute at this stage must be resolved in Harvey's favor. Accordingly, I find that Harvey has set forth meritorious state law claims for assault and battery. Although Blankenbeckler contends that Harvey placed a book in the tray slot, and not his hand, that is a factual disagreement that must be resolved by the factfinder.

VIII.

11

Lastly, Harvey moved to compel production of documents from the defendants. The motion will be denied without prejudice. Regarding production of a video Harvey believes exists of the conduct in question, the defendants respond that no such video exists and that they are not its custodian. The fact of their non-custodial status calls into question whether they know if a video exists. Accordingly, the motion will be denied without prejudice, and Harvey will be afforded an opportunity to request production of the video, if any, from ROSP. The footage, if it exists, would be highly relevant to Harvey's claims.

* * *

For the reasons stated, defendants' motion for summary judgment will be denied in part, and granted in part only to the extent that defendants are immune from suit in their official capacities. The matter will be set for a jury trial.

An appropriate order will be entered this day.

ENTER this 27th day of August, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE